```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION
```

DAVID PAUL LYNCH,

v.                              Case No. 8:17-cr-37-VMC-AEP
                                         8:21-cv-02614-VMC-AEP

UNITED STATES OF AMERICA.

_____/

**ORDER**

This matter is before the Court pursuant to David Paul Lynch's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 159), filed on October 27, 2021. The United States of America responded on November 29, 2021 (Doc. # 3), and Mr. Lynch replied on December 21, 2021. (Doc. # 10). With leave from the Court, the United States filed a sur-reply on January 10, 2022. (Doc. # 13). For the reasons that follow, the Motion is denied.

**I.   Background**

On September 6, 2017, a grand jury indicted Mr. Lynch on eight counts of attempting to produce child pornography in violation of 18 U.S.C. § 2251(a) and (e); one count of traveling in foreign commerce to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b); one count of receipt of child pornography, in violation of 18 U.S.C. §

1

2252(a)(2) and (b)(1); one count of attempting to travel in foreign commerce to engage in sexual conduct, in violation of 18 U.S.C. § 2423(b) and (e); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). (Crim. Doc. # 58).

The charges against Mr. Lynch for attempting to produce child pornography involve his travel to the Philippines to engage in sexual activity with three underage girls. On June 15, 2005, Mr. Lynch filmed himself sexually abusing Liza, who was approximately fifteen years old at the time. (Crim. Doc. # 149 at 154:22-155:4, 160:6-14). In December 2006, Mr. Lynch travelled to the Philippines to meet with Erica, who was approximately thirteen years old at the time. (Id. at 177:5-14, 182:18-21). While in the Philippines, Mr. Lynch filmed himself sexually abusing Erica. (Id. at 179:13-21). Similarly, in August 2007, Mr. Lynch travelled to the Philippines to meet with Rica, who was approximately thirteen years old. (Id. at 210:16-24, 211:5-8). Mr. Lynch took a photograph of himself sexually abusing Rica. (Id. at 210:4-15).

At trial, the Government introduced evidence of Liza, Erica, and Rica's ages in three ways. First, investigators relied on chat messages sent by Mr. Lynch, where the girls'

ages were discussed. In a February 1, 2006, chat between Mr. Lynch and an unknown individual, Mr. Lynch stated that Liza was "only 16[.]" (Crim. Doc. # 102-20 at 2). Based on this chat, Task Force Agent Megan Buck testified at trial that Liza would have been fifteen in June 2005. (Crim. Doc. # 149 at 160:12-14). Similarly, in a December 5, 2006, chat with Thomas Winqvist, an individual with whom Mr. Lynch conversed frequently, Mr. Winqvist relayed to Mr. Lynch that Erica was thirteen. (Crim. Doc. # 102-23 at 1). As to Rica, Agent Buck testified that based on the chats, Rica's age was believed to be around thirteen. (Crim. Doc. # 149 at 211:5-8).

Second, the Government presented expert testimony from Dr. Walter Lambert, a pediatrician and pediatrics professor, that in Dr. Lambert's medical opinion Liza, Erica, and Rica were under eighteen. (Doc. # 150 at 8:21-25, 23:20-24:3, 30:24-31:10, 29:20-30:3).

Third, the Government introduced a video at trial depicting Mr. Lynch engaging in sexual activity with Erica and other women who were not alleged to be minors. (Crim. Doc. # 149 at 204:17-205:2). The video was accompanied by a transcript and partial translation, since at certain points throughout the video, the participants conversed in a Filipino dialect, identified as Tagalog. (Id. at 203:3-13).

3

At one point in the video, one of the women states that Erica is thirteen years old. (Id. at 205:23–206:1). This statement was made in English. (Id.).

Mr. Lynch presented expert testimony from Dr. Arlan Rosenbloom, a retired pediatrics professor, regarding the girls' ages. (Id. at 151:16–22). Dr. Rosenbloom testified that he found "no evidence that one could say with any degree of medical certainty that the individuals in those photographs and videos were under 18 years of age." (Id. at 181:18–20).

Following a jury trial, on October 13, 2017, Mr. Lynch was found guilty on all counts. (Crim. Doc. # 101). On March 1, 2018, the Court sentenced Mr. Lynch to a 3,960-month term of imprisonment, followed by a 15-year term of supervised release. (Crim. Doc. # 125).

II. **Discussion**

The Government contends that Mr. Lynch's motion should be dismissed because it is untimely. (Civ. Doc. # 3 at 8). Mr. Lynch argues that the statute of limitations should be equitably tolled due to COVID-19. (Civ. Doc. # 10 at 1). In the alternative, the Government also contends that Mr. Lynch's motion should be denied on the merits. (Civ. Doc. #

3 at 10). The Court will first address timeliness before moving on to the merits of Mr. Lynch's claims.

**A.     Timeliness**

The one-year statute of limitations for filing a motion under Section 2255 begins to run from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date any unconstitutional government impediment to the movant's motion is removed; (3) the date on which the right asserted was initially recognized by the Supreme Court; or (4) the date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f); Jones v. United States, 304 F.3d 1035, 1037-38 (11th Cir. 2002).

Mr. Lynch has not alleged that any unconstitutional government impediment that prevented him from timely filing his motion as required by Section 2255(f)(2). Nor does he identify a newly recognized right as required by Section 2255(f)(3), or allege that he discovered any new facts through the exercise of due diligence under Section 2255(f)(4). Accordingly, Section 2255(f)(1) requires Mr. Lynch to have filed his motion within the year after his conviction became final.

Mr. Lynch's judgment of conviction became final on March 9, 2020 — the day that the Supreme Court denied certiorari. (Crim. Doc. # 156); see Washington v. United States, 243 F.3d 1299, 1300-01 (11th Cir. 2001) ("Washington's conviction became final on October 6, 1997, the day the Supreme Court denied his certiorari petition."). Therefore, Mr. Lynch had one year from that date, through March 9, 2021, to file a timely Section 2255 motion. But Lynch's motion was not filed until October 27, 2021 — nearly twenty months after his conviction became final. Accordingly, Lynch's motion is untimely under 28 U.S.C. § 2255(f).

Unless equitable tolling applies, the motion is time-barred and due to be dismissed. See Warmus v. United States, 253 F. App'x 2, 5-6 (11th Cir. 2007) (holding that a Section 2255 motion filed more than one year after petitioner's conviction becomes final is "subject to dismissal as time-barred").

### B. **Equitable Tolling**

Statutes of limitations for motions under Section 2255 can be equitably tolled under certain circumstances. Outler v. United States, 485 F.3d 1273, 1280 (11th Cir. 2007). "Equitable tolling is only available if the petitioner establishes (1) extraordinary circumstances and (2) due

6

diligence." Id. Indeed, "[e]quitable tolling is an extraordinary remedy and is applied sparingly." Id. The movant "bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008).

Mr. Lynch submits that the COVID-19 pandemic restricted his access to the law library and the commissary, and that he has diligently pursued his rights. (Civ. Doc. # 10 at 1-2). Specifically, Mr. Lynch explains that beginning in March 2020, the prison facility where he was housed instituted a facility lockdown and prevented inmates from accessing the law library. (Id. at 8). Because of these lockdowns, Mr. Lynch was unable to obtain the requisite legal form to submit his Section 2255 motion. (Id. at 8-9). In addition, Mr. Lynch explains that he was separated from his legal work, including materials containing his criminal case number, rendering him unable to list the crimes with which he was charged. (Id. at 8). Mr. Lynch also states that the prison facility restricted his ability to purchase items from the commissary, including pens, paper, envelopes, and stamps, and although staff members "were supposed to bring [the inmates] materials to write with, FBOP staff at USP Tucson never provided [Mr.

7

Lynch] with pens, paper, envelopes, or stamps which [he] could use to file a 2255 motion." (Id. at 9). Indeed, a memorandum indicates that commissary sales for Mr. Lynch's prison facility were suspended on October 20, 2020. (Id. at 16).

As an initial matter, "neither lack of access to a federal law library, nor periods of time in which a prisoner is separated from his legal documents constitute extraordinary circumstances." Castillo v. United States, No. 16-17028-E, 2017 WL 5591797, at *3 (11th Cir. May 4, 2017); see also Holland v. Florida, 560 U.S. 631, 649 (2010) (stating that lack of access to a federal law library is not an "extraordinary circumstance" justifying equitable tolling); Dodd v. United States, 365 F.3d 1273, 1283-84 (11th Cir. 2004) ("[L]ockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate."); Phillips v. United States, No. 8:18-cr-91-JDW-AAS, 2021 WL 679259, at *3 (M.D. Fla. Feb. 22, 2021), certificate of appealability denied, No. 21-11895-J, 2021 WL 7448601 (11th Cir. Nov. 4, 2021), cert. denied, 212 L. Ed. 2d 591, 142 S. Ct. 1691 (2022) (finding insufficient to justify equitable tolling petitioner's allegations that "prisoners are not only denied access to legal materials, they have been, and are, denied

unfettered access to writing instruments, copying capabilities, and postage stamps").

Further, to the extent Mr. Lynch alleges that the lockdowns at the prison facility prevented him from obtaining the necessary materials to prepare his 2255 motion – stamps, pen, and the standard form – he has not indicated what steps he took to exercise diligence. See George v. Lamas, No. 1:11-CV-01462, 2012 WL 4506077, at *5 (M.D. Pa. Oct. 2, 2012) (finding petitioner's lack of access to habeas forms justified equitable tolling [after the denial of his petition for allowance of appeal] where "he wrote to the Clerk of Court to request habeas forms approximately one week later, but the Clerk's Office did not send the forms until [after the filing deadline]"); Bonilla v. Ricks, No. 00CIV.7925(LAP)(AJP), 2001 WL 253605, at *2 (S.D.N.Y. Mar. 14, 2001) (declining to find equitable tolling applied in a 18 U.S.C. § 2244 case during the period of time it took petitioner to receive habeas forms from the Clerk's office).

Specifically, Mr. Lynch has not indicated whether, at any point, he requested such materials from the prison facility. Nor has he explained why he did not request a copy of the form from the Clerk's office, given that he filed a motion with this Court on March 5, 2021, in his criminal case.

9

(Crim. Doc. # 157). And as for the commissary materials, a May 25, 2021, memorandum from the prison warden explaining that disruptive conduct would result in a restriction of commissary spending limit to $50 per week suggests that at some point, the suspension of commissary was lifted. (Doc. # 10 at 26). Mr. Lynch does not state when the suspension of commissary was lifted, nor why he was unable to obtain supplies after that point.

In short, Mr. Lynch has not demonstrated that he diligently pursued his rights. The Court thus finds that equitable tolling does not apply. Mr. Lynch's motion is thus due to be dismissed as untimely.

### C. **Merits**

Alternatively, even if Mr. Lynch's motion were timely, he cannot prevail on the merits of his claims. Mr. Lynch asserts two grounds for relief, both based on ineffective assistance of counsel. (Civ. Doc. # 1 at 4-5). In ground one, Mr. Lynch alleges his trial counsel was deficient for failing to locate and present the testimony of Mr. Lynch's victims. (Id. at 13). In ground two, Mr. Lynch alleges his trial counsel was deficient for failing to hire an independent translator. (Id. at 14).

Mr. Lynch bears the burden of proving that he is entitled to relief under Section 2255. See Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015) ("[W]e note that Rivers bears the burden to prove the claims in his [Section] 2255 motion."). The Court will address each of Mr. Lynch's arguments in turn.

### 1. Ground One – Victim Testimony

Mr. Lynch contends that his trial counsel was ineffective because he failed to locate and present the testimony of the subjects of the videos forming the basis of Counts One through Five and Seven though Nine. (Civ. Doc. # 1 at 4, 13). According to Mr. Lynch, he repeatedly informed his trial counsel that Liza, Erica, and Rica were over eighteen years old, and he provided his trial counsel with the names and contact information to locate them in the Philippines. (Id. at 13). Had trial counsel located those individuals, Mr. Lynch argues, they would have testified that they were over the age of eighteen at the time the videos and photos were taken. (Id.).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. Strickland, 466 U.S. 668, 687 (1984).

11

To establish deficient performance, Mr. Lynch must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (citations omitted). In other words, Mr. Lynch must show that "no competent counsel would have taken the action that [his] counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

Here, Mr. Lynch has not established that his trial counsel was deficient under Strickland. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). "[T]he presentation of testimonial evidence is a matter of trial strategy[.]" Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic

12

decision[.]" Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995).

At trial, Mr. Lynch's counsel did not present testimony from Mr. Lynch's alleged victims. Rather, counsel focused on presenting expert testimony regarding the victims' ages. Mr. Lynch has not shown that no reasonable attorney would decline to present the testimony of the victims in the case, especially given the nature of the charges against Mr. Lynch. Indeed, "allegations of what a witness would have testified are largely speculative." Buckelew, 575 F.2d at 521. Mr. Lynch provides no support for his contention that Liza, Erica, and Rica would have testified that they were over the age of eighteen when the photos and videos were created. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."); see also Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009) (holding that the district court did not err in denying claim for ineffective assistance of

13

counsel when movant did not provide an affidavit setting forth the testimony of the potential witness).

Because Mr. Lynch has not presented evidence demonstrating that the testimony of his victims would have been favorable to his defense, he has not shown that trial counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

### 2. Ground Two – Translator

Mr. Lynch also contends his trial counsel was ineffective because he did not hire an independent translator. (Civ. Doc. # 1 at 5, 14). At trial, the Government provided a translation from Tagalog to English of portions of a video where Mr. Lynch engaged in sexual activity with Erica. (Id. at 14; Crim. Doc. # 149 at 201:16–20). At one point in that video, another individual states that Erica is thirteen years old. (Crim. Doc. # 149 at 205:20–206:1). However, according to Mr. Lynch, the translation was inaccurate because the individual in the video was speaking Kapampangan, not Tagalog. (Doc. # 1 at 14). Mr. Lynch asserts that he alerted trial counsel to the mistranslation but that his counsel did not hire an independent translator. (Id.). Mr. Lynch maintains that a correct translation would establish that the individual in the video did not state she was

thirteen years old. (Id.). Even if the Court assumes such performance was deficient, this claim still fails regarding the prejudice prong.

To satisfy Strickland's second prong — prejudice — Mr. Lynch must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[I]f a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component." Ortiz v. United States, No. 8:16-cv-1533-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

Here, Mr. Lynch cannot show that he was prejudiced by any failure to correct the alleged mistranslations because the critical portion of the exchange – where Erica's age was stated – occurred in English. (Crim. Doc. # 149 at 205:23-206:1). Thus, even assuming that Mr. Lynch is correct that at certain points throughout the video, the individuals spoke Kapampangan, not Tagalog, no prejudice resulted from the alleged mistranslations.

### III. Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied

The Court declines to issue a certificate of appealability because Mr. Lynch has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Lynch to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Mr. Lynch shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

David Paul Lynch's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 159) is **DENIED**. The Clerk is directed to enter judgment for the United States of America and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 3rd day of August, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

16